UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| THE GUY MITCHELL & BETTY J. MITCHELL FAMILY TRUST,<br><br>            Plaintiff,<br><br>      vs.<br><br>ARTISTS RIGHTS ENFORCEMENT CORPORATION, a New York corporation,<br><br>            Defendant. | No. CV-11-024-LRS<br><br>**ORDER DENYING MOTION TO DISMISS,** *INTER ALIA* |

**BEFORE THE COURT** is Defendant's Motion To Dismiss Amended Complaint (ECF No. 9) and Plaintiff's Motion For Leave To File Supplemental Declaration Of Joseph Stanzak (ECF No. 18). These motions are heard without oral argument.

**I. BACKGROUND**

This is a diversity action in which the Plaintiff alleges causes of action for breach of contract, breach of fiduciary duty, common law fraud, negligent misrepresentation and conversion. The Plaintiff is a trust currently existing under the laws of the State of Washington. The Defendant, Artists Rights Enforcement Corporation (AREC), is a New York corporation with its principal place of business in Westchester County, New York.

**ORDER DENYING MOTION TO DISMISS-**          **1**

Plaintiff's Amended Complaint alleges the Defendant has improperly retained royalties owed to Plaintiff, and that as a result thereof, Plaintiff will be deprived of in excess of $75,000, exclusive of interest and costs.

Plaintiff's Amended Complaint alleges it is proper for this court to exercise personal jurisdiction over the Defendant pursuant to RCW 4.28.185(1)(a) and (b) because "Plaintiff's claims arise out of Defendant's transaction of business within this state [Washington] in that Defendant purposely negotiated and entered into an agreement with a resident of this state, thereby creating an ongoing relationship between Defendant and a resident of this state and committing Defendant to future obligations to a resident of this state." Plaintiff also alleges its claims arise out of Defendant's commission of tortious acts in the State of Washington in that Defendant breached duties and made material misrepresentations to a resident of the State of Washington and converted the property of a resident of Washington, causing injury in Washington.

**II. DISCUSSION**

    **A. Subject Matter Jurisdiction**

Diversity jurisdiction exists only "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs . . . ." 28 U.S.C. § 1332(a). A dismissal for lack of jurisdictional amount is proper if it was legally impossible for Plaintiff to recover on its damage theories when the case was filed. "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount . . . ." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89, 58 S.Ct. 586 (1938). The amount in controversy is determined from the allegations or prayer of the complaint. *Id*. at 289. Affidavits are admissible to establish particular elements of damages or the value of the property involved. *McMillian v. Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 844-45

(7th Cir. 2009).

Defendant contends the royalties at stake are approximately $1,000 per year such that even in 15 years, the jurisdictional amount ($75,000) will not be met[1], warranting dismissal pursuant to Fed. R. Civ. P. 12(b)(1). Plaintiff's Amended Complaint alleges that before Plaintiff hired AREC, it was collecting royalties from Sony Music Entertainment (Sony) which averaged $12,000 per year. (ECF No. 7 at Paragraph 14). According to Joseph Stanzak, the current sole Trustee of the Mitchell Family Trust, every contract with Sony provides for the semi-annual payment of royalties forever. (Stanzak Declaration, ECF No. 15 at Paragraph 4). Stanzak asserts it is Defendant's position that pursuant to its contract with the Trust (executed in 2005), it is entitled to retain 50 percent of these royalty payments forever. (*Id*. at Paragraph 29). As such, Plaintiff contends that assuming royalties continue to accrue at the sum of $12,000 a year[2], the jurisdictional amount will be reached in 12 years ($6,000 (½ of 12,000) x 12= $72,000), plus an additional $3,000 Stanzak claims Defendant already improperly retained for calendar year 2009 (½ of $6,000). (*Id*. at Paragraph 27).

It is noted that in its reply materials, Defendant does not challenge Plaintiff's argument regarding the jurisdictional amount. The court concludes that because there is no "contractual gap" in that the royalty contracts continue indefinitely, the value of the property right at issue, as calculated by Plaintiff, is not speculative. Accordingly, the court concludes the jurisdictional amount is met

---

[1] Defendant cites to the Declaration of Gabin Rubin (ECF No. 12 at Paragraph 17) in support of this contention, but it is noted that Rubin states the royalties at stake are $1,500 a year.

[2] Attached to Stanzak's declaration is a royalty earnings statement for the first six months of 2010 showing the Mitchell Family Trust earned $11,903.91. (Ex. C to ECF No. 15).

**ORDER DENYING**
**MOTION TO DISMISS-**              3

and federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332(a). There does not appear to be a legal certainty that the claim is really for less than the jurisdictional amount.

### B. Personal Jurisdiction

Absent one of the traditional bases for personal jurisdiction- presence, domicile, or consent- due process requires a defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154 (1945). The forum state must have a sufficient relationship with the defendant and the litigation to make it reasonable to require defendant to defend the action in a federal court located in that state. The purpose of the "minimum contacts" requirement is to protect the defendant against the burdens of litigating at a distant or inconvenient forum and insure that states do not reach out beyond the limits of their sovereignty imposed by their status in a federal system. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559 (1980). "Only contacts occurring prior to the event causing the litigation may be considered." *Farmers Ins. Exch. v. Portage LaPrairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990).

### 1. General Jurisdiction

The extent to which a federal court can exercise personal jurisdiction, absent the traditional bases of consent, domicile or physical presence, depends on the nature and quality of defendant's "contacts" with the forum state. If defendant's activities in the forum state are "substantial, continuous and systematic," a federal court can, if permitted by the state's long-arm statute, exercise jurisdiction as to any cause of action, even if unrelated to defendant's

**ORDER DENYING MOTION TO DISMISS-**                  4

activities within the state. *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 446-47, 72 S.Ct. 413 (1952). General jurisdiction over a nonresident defendant is proper when the defendant's actions in the state are so substantial and continuous that justice allows the exercise of jurisdiction even for claims not arising from the defendant's contacts within the state. *Raymond v. Robinson*, 104 Wn.App. 627, 633, 15 P.3d 697 (2001). RCW 4.28.080 (10) authorizes general jurisdiction over a nonresident defendant if the defendant is transacting substantial and continuous business within the state of such character to give rise to a legal obligation. *Id*. Even if a defendant is engaged in substantial and continuous business within the forum state, due process requires that the exercise of jurisdiction in the particular case be reasonable, that is, not be a denial of "fair play and substantial justice." *Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.*, 1 F.3d 848, 851, fn. 2 (9th Cir. 1993).

Here, Plaintiff does not contend Washington should exercise general personal jurisdiction over the Defendant.

### 2. Specific Jurisdiction

Even if a non-resident defendant's "contacts" with the forum state are not sufficiently "substantial, continuous and systematic" for general jurisdiction, the defendant may still be subject to jurisdiction on claims related to its activities there. This "limited" or "specific" personal jurisdiction requires a showing that: (1) the out-of-state defendant purposefully directed its activities toward residents of the forum state or otherwise established contacts with the forum state; (2) plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) the forum's exercise of personal jurisdiction in the particular case must be reasonable in that it must comport with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-76, 105

**ORDER DENYING
MOTION TO DISMISS-**                                    5

S.Ct. 2174 (1985).

The defendant must have purposefully directed its activities at forum residents, or purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of local law. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228 (1958). This protects against a non-resident defendant being haled into local courts solely as the result of "random, fortuitous or attenuated" contacts. *Burger King*, 471 U.S. at 475. "[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297. The "purposeful availment" requirement is satisfied "where the (forum-related) contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state." *Burger King*, 471 U.S. at 475. Courts find such a connection where non-resident defendants "purposefully direct" their activities toward forum residents." *Calder v. Jones*, 465 U.S. 783, 789-90, 104 S.Ct. 1482 (1984). Contracting parties who "reach out beyond one state to create continuing relationships and obligations with citizens of another state" may be found to have "purposefully availed" themselves of benefits and protections under the other state's laws. *Burger King*, 471 U.S. at 473. Provided a "substantial connection" with the forum is created, even a single act may support specific, limited personal jurisdiction over a non-resident. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199 (1957). Plaintiff bears the burden on the "purposeful availment" and "arising out of" requirements. *Burger King*, 471 U.S. at 477.

Specific personal jurisdiction is recognized by Washington's long-arm statute, RCW 4.28.185, which provides:

> (1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this

**ORDER DENYING**
**MOTION TO DISMISS-**          6

> section enumerated, thereby submits said person . . . to the jurisdiction of the courts of this state **as to any cause of action arising from the doing of any said acts**:
>
> (a) The transaction of any business within this state;
>
> (b) The commission of a tortious act within this state;
>
> . . . .
>
> (3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

(Emphasis added).

To determine whether specific jurisdiction exists under RCW 4.28.185(1)(a), the Plaintiff must establish three factors: 1) AREC must have purposefully done some act or consummated some transaction in Washington; 2) the cause of action must arise from, or be connected with, such act or transaction; and 3) the exercise of jurisdiction must not offend traditional notions of fair play and substantial justice. *Raymond*, 104 Wn. App. at 637. The focus is on the quality and nature of the activities within the forum state, not the number of acts or some other mechanical standard. *Id*.

A plaintiff can establish purposeful availment by showing the initiation of a transaction outside the state "in contemplation that some phase of it will take place in the forum state." *CTVC of Hawaii Co., Ltd. v. Shinawatra*, 82 Wn. App. 699, 711, 919 P.2d 1243 (1996). Importantly, a defendant may purposefully act in the forum state even though the defendant did not initiate contact if a business relationship subsequently arises. *Id*. The mere execution of a contract with a resident, however, does not establish purposeful availment. *MBM Fisheries, Inc. v. Bollinger Machine Shop and Shipyard, Inc.*, 60 Wn.App. 414, 423, 804 P.2d 627 (1991). In determining whether entering a contract establishes purposeful availment, it is necessary to examine the circumstances of the entire transaction, including an evaluation of prior negotiations, contemplated future consequences,

**ORDER DENYING MOTION TO DISMISS-**            7

the terms of the contract, and the parties' actual course of dealing. *Id*. Communication by telephone and e-mail is not dispositive as the salient factor is whether a defendant negotiated an ongoing business relationship with a Washington resident that has substantive effects and created future obligations in Washington. *Precision Laboratory Plastics, Inc. v. Micro Test, Inc.*, 96 Wn.App. 721, 727 at n. 5, 981 P.2d 454 (1999).

Under RCW 4.28.185(1)(b), a tortious acts occurs in Washington when the injury occurs within Washington. *Grange Ins. Ass'n v. State*, 110 Wn.2d 752, 757, 757 P.2d 933 (1988). An injury "occurs" in Washington for purposes of the long-arm statute "if the last event necessary to make the defendant liable for alleged tort occurred in Washington." *MBM Fisheries*, 60 Wn.App. at 425. Washington courts use the "but for" test to determine whether a cause of action against a non-resident defendant arises from, or is connected with, the defendant's acts in the forum state. *Raymond*, 104 Wn.App. At 640. Jurisdiction is proper if the events giving rise to the claim would not have occurred "but for" the solicitation of business in the forum state. *CTVC*, 82 Wn.App. At 719.

In determining the "reasonableness" of exercising personal jurisdiction, whether general or specific, the following factors must be considered: (1) the extent of defendant's purposeful interjection; (2) the burden on defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution to the controversy; (6) the importance of the forum to plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Core-Vent Corp. v. Nobel Inds. AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1994). No one factor is dispositive and the court must balance all of the factors. *Id*. at 1488. The "reasonableness" requirement may defeat local jurisdiction even if defendant has purposefully engaged in forum-related activities.

*Burger King*, 471 U.S. at 477-78. The burden is on the defendant to prove the forum's exercise of jurisdiction would not comport with "fair play and substantial justice." *Amoco*, 1 F.3d at 851-52.³ If a non-resident has deliberately engaged in significant activities within the forum state, "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King*, 471 U.S. at 476. And furthermore, if defendant "purposefully had directed his activities at forum residents . . . he must present a compelling case" that the exercise of jurisdiction would in fact be unreasonable. *Id*. at 477.

Although the defendant is the moving party on a motion to dismiss for lack of personal jurisdiction, plaintiff is the one who invoked the court's jurisdiction and bears the burden of proving the necessary jurisdictional facts. *Flynt Distrib. Co., Inc., v. Harvey*, 734 F.2d 1389, 1392 (9th Cir. 1984). Motions to dismiss under Fed. R. Civ. P. 12(b)(2) may test either the plaintiff's theory of jurisdiction or the facts supporting the theory. In evaluating plaintiff's jurisdictional theory, the court need only determine whether the facts alleged, if true, are sufficient to establish jurisdiction. No evidentiary hearing or factual determination is necessary. *Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 153 (2nd Cir. 1999). Where the motion challenges the facts alleged, however, it must be decided based on competent evidence such as declarations and discovery materials. *Data Disc, Inc. v. Systems Technology*, 557 F.2d 1280, 1289 n. 6 (9th Cir. 1977).

Where a district court bases it jurisdictional ruling on affidavits and

---

³ To establish personal jurisdiction over AREC, Plaintiff must show that Washington's jurisdictional statute confers jurisdiction over AREC and that the exercise of jurisdiction accords with federal constitutional principles. *Amoco*, 1 F.3d at 850. Washington's statutes- 4.28.080 and 4.28.185- are co-extensive with federal constitutional standards and thus, statutory and constitutional standards merge into a single due process test. *Id*. at 851.

**ORDER DENYING MOTION TO DISMISS-**               9

discovery materials without holding an evidentiary hearing, dismissal is appropriate only if the plaintiff has failed to make a prima facie showing of personal jurisdiction. *Amoco*, 1 F.3d at 850. A plaintiff makes a prima facie showing when he has produced admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction. *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). Moreover, until an evidentiary hearing or trial on the merits, the complaint's uncontroverted factual allegations must be accepted as true, and any factual conflicts in the parties' declarations must be resolved in the plaintiff's favor. *Id*.[4] Only "well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Here, no party has requested an evidentiary hearing.

### a. Analysis

Gabin B. Rubin, Vice President and General Counsel of AREC, says that Joseph Stanzak approached her in 2000 in New York at a conference the two were attending. Rubin says Stanzak expressed concern that Sony was withholding royalties from the Mitchell Family Trust. According to Rubin, the "Plaintiff sought out and contacted AREC on its own again in or about 2005, seeking to replace the audit/accounting company the Mitchell Family Trust had been working with (another New York company named Webman & Associates)." After that, Rubin says Stanzak and his mother, Betty J. Mitchell, the widow of Guy Mitchell

---

[4] It is only at an evidentiary hearing or trial that the plaintiff is required to establish such facts by a preponderance of the evidence, should the prima facie showing be contested by the defendant. *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 587 at n. 3 (9th Cir. 1993).

**ORDER DENYING MOTION TO DISMISS-**                                10

and a former trustee of the Mitchell Family Trust, "contacted AREC by phone seeking to hire AREC to assist in pursuing and collecting artist royalties from Sony." Rubin says these negotiations took place by telephone calls and the contract was executed and delivered by mail. Rubin asserts that Stanzak "conducted these calls to New York from his home state in Idaho." (Declaration of Gabin B. Rubin, ECF No. 12 at Paragraphs 9-13).

In his original declaration, Stanzak notes that the Mitchell Family Trust was formed under the laws of the State of Nevada, but has existed under the laws of the State of Washington since 2010. According to Stanzak, Betty J. Mitchell was presented in 2004 with a contract by Webman & Associates which contained certain release language. Stanzak says he sought the assistance of an entertainment attorney to advise Mrs. Mitchell whether to sign the release and was referred by an attorney in Tennessee to Gabin B. Rubin. Stanzak says he then contacted Ms. Rubin who eventually advised Mrs. Mitchell not to sign the release and recommended Mrs. Mitchell speak to Charles "Chuck" Rubin, President of AREC. (ECF No. 15 at Paragraphs 4-10). According to Stanzak:

> Thereafter, Mr. Rubin, Mrs. Mitchell and I participated in a series of conference calls. **Mrs. Mitchell and I participated in the calls together by phone extension or by speaker phone at her home in Cheney, Washington.**[5] **The first phone call was placed by Mr. Rubin to Mrs. Mitchell's home in Cheney, Washington**, and thereafter the phone calls were back-and-forth among us.
>
> . . .
>
> By the end of that series of telephone conference calls among Mr. Rubin, Mrs. Mitchell and me (**in which Mrs. Mitchell and I participated in Cheney, Washington**), Mr. Rubin had convinced Mrs. Mitchell and me to hire AREC.

(ECF No. 15 at Paragraphs 11 and 17)(emphasis added).

Drafts of a proposed agreement were sent to Mrs. Mitchell in Cheney,

---

[5] Stanzak's home is in Twin Falls, Idaho. (ECF No. 15 at page 8).

**ORDER DENYING MOTION TO DISMISS-** 11

Washington, and Mrs. Mitchell signed the agreement in Cheney on or around June 13, 2005. (ECF No. 15 at Paragraphs 20 and 21).

Stanzak claims he has never met Ms. Rubin and never attended a conference in New York. He claims he did not learn of Ms. Rubin until an attorney referred him to her in 2004. Stanzak asserts that "[a]lthough I initially contacted Ms. Rubin for advice about the Webman Release, Mr. Rubin on behalf of AREC first contacted Mrs. Mitchell and me about hiring AREC to represent the Trust in an audit of Sony." (ECF No. 15 at Paragraphs 32 and 33).

As part of its reply, Defendant AREC submits an affidavit from Charles Rubin (ECF No. 17). Rubin says Stanzak wrote to AREC in 2001 seeking assistance in obtaining royalties for the Mitchell Family Trust from various sources (other than Webman and Sony). Rubin says he spoke with Stanzak concerning his royalty issues and that "[a]t no time in 2001 did I ever speak with Mrs. Mitchell- all contacts were with Mr. Stanzak from his home in Idaho." According to Rubin, letter agreements and authorizations were sent to Stanzak at his home in Idaho. Rubin says the Plaintiff, through Mr. Stanzak and without solicitation by AREC, again sought out and contacted AREC in or around 2005 to assist the Trust in bringing a lawsuit against both Webman and Sony. According to Rubin, "Mrs. Mitchell and her son . . . contacted AREC by phone seeking to hire AREC to assist in pursuing and collecting royalties from Sony." Rubin asserts that Stanzak, the Trust and AREC were already in a business relationship by the time the contract negotiations commenced concerning the Sony royalties and therefore, there was never a need to entice the Trust to enter into a business relationship with AREC. Rubin says he "can recall one single phone call to Washington, when Mr. Stanzak was visiting his mother and asked me to call him there." Rubin claims that all negotiations took place via telephone call with Stanzak in Idaho and that Stanzak made these calls to New York from Idaho.

**ORDER DENYING**
**MOTION TO DISMISS-**                                    12

Rubin acknowledges the contract regarding the Webman/Sony royalties was sent to Mrs. Mitchell in Washington for her signature.

Plaintiff seeks leave to file a supplemental declaration from Stanzak and the court will grant such leave since Mr. Rubin's version of events was presented in conjunction with Defendant's reply and makes assertions to which Stanzak previously did not have an opportunity to respond. In his Supplemental Declaration (ECF No. 19-1), Stanzak says he does not recall contacting AREC in 2001. Stanzak asserts that at the time, he was seeking assistance in conducting an audit and recovering royalties from Gusto Records. According to Stanzak, no attorney, nor AREC, was hired to represent the Trust in its dispute with Gusto Records because Stanzak and his mother decided not to pursue any action. Stanzak asserts the contract negotiated in 2004 relating to the Sony royalties was completely unrelated to the issue Stanzak inquired about in 2001. He asserts that prior to 2004, there was no relationship between the Trust and AREC, or between himself and AREC.

The record indicates that even if a formal business relationship was not established between the Mitchell Family Trust and AREC in 2001, there was some communication between Charles "Chuck" Rubin and Joseph Stanzak at that time (Ex. B to Ct. Rec. 17). There is nothing, however, to indicate that Mrs. Mitchell executed the agreements and authorizations referred to in Mr. Rubin's December 26, 2001 letter to Stanzak. Stanzak acknowledges that in 2004, he initially contacted Gabin Rubin, but that it was Charles "Chuck" Rubin who first contacted he [Stanzak] and Mrs. Mitchell about hiring AREC to represent the Trust in an audit of Sony. The court must resolve any conflict in favor of the Plaintiff and therefore, assumes it was Mr. Rubin who made the contact. That said, this would not be unusual considering Stanzak had first contacted Gabin Rubin, and the fact there had been communication between Charles Rubin and Stanzak in 2001. The

**ORDER DENYING
MOTION TO DISMISS-                         13**

critical thing, however, is that there is no dispute a formal business relationship arose from Mr. Rubin's contact with Stanzak in 2004-2005 in that the Trust authorized AREC to pursue Sony for royalties. This was intended to benefit the Trust. Although at that time, the Trust existed under the laws of the State of Nevada, its sole beneficiary was Mrs. Mitchell, a Washington resident. (Paragraph 15 of Amended Complaint).[6] The court must assume as true Mr. Stanzak's assertion that this business relationship- the agreement between the Trust and AREC- was negotiated via telephone between AREC in New York and Mrs. Mitchell and Stanzak located in Washington at Mrs. Mitchell's home. Thus, this is not a situation where the contract was simply executed by Mrs. Mitchell in Washington. The court concludes that AREC created a "continuing obligation" between itself and a resident of the State of Washington and therefore availed itself of the privilege of conducting business in Washington. The dispute between the Plaintiff and AREC arises out of this obligation.

In addition, the as yet uncontroverted allegations of Plaintiff's Amended Complaint state with adequate specificity the basis for Plaintiff's tort claims of fraud, negligent misrepresentation and conversion causing injury within Washington (i.e., Paragraph 30 alleging that "Mr. Rubin . . . stated . . . that AREC would only take 50% of additional royalty amounts recovered as a proximate result of AREC's action and involvement"). The alleged intentional and negligent misrepresentations were made to a resident of the State of Washington, Mrs. Mitchell, during negotiations with Mrs. Mitchell and Mr. Stanzak while they were present in Mrs. Mitchell's home in Washington. It is alleged these misrepresentations induced Mrs. Mitchell to enter into the contract with AREC on

---

[6] The record does not indicate who became the beneficiary of the Trust upon the death of Mrs. Mitchell in 2010, although her estate would be a logical possibility.

**ORDER DENYING**
**MOTION TO DISMISS-** 14

behalf of the Mitchell Family Trust. The events giving rise to these tort claims would not have occurred "but for" AREC's solicitation of a business relationship with the Trust and its beneficiary, Mrs. Mitchell, a Washington resident. See *Dole Food Co. v. Watts*, 303 F.3d 1104, 1112 (9th Cir. 2002)(alleged fraudulent communications intended to induced California managers into detrimental contract arrangement subjected non-resident defendants to personal jurisdiction in California).

Plaintiff has met its burden on the "purposeful availment" and "arising out of" requirements. Conversely, Defendant AREC has not made a compelling case that this court's exercise of jurisdiction over it would be unreasonable. While there is some burden on the Defendant, it is not unreasonable. Mr. Rubin appears to be the only significant witness for the Defendant as he is the one who was involved in the negotiation of the agreement with the Trust (the Plaintiff). The court agrees with Plaintiff that witnesses to allegations concerning Sony appear irrelevant since it is the contract between the Trust and AREC, and not the contract between the Trust and Sony, which is at issue. Washington has an interest in adjudicating this dispute since the contract was negotiated with and executed by a Washington resident (Mrs. Mitchell) who was the sole beneficiary of the Trust. The parties' dispute can be efficiently resolved in the Eastern District of Washington.

Plaintiff has produced admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction. Therefore, Plaintiff has made a prima facie showing that Defendant is subject to personal jurisdiction in Washington. Washington has a sufficient relationship with the Defendant and the litigation to make it reasonable to require Defendant to defend the action in the U.S. District Court for the Eastern District of Washington. The Defendant is not being haled into this court solely as the result of "random, fortuitous or attenuated"

contacts. Dismissal pursuant to Fed. R. Civ. P. 12(b)(2) is improper at this time.

**C. Venue**

Venue is proper in the Eastern District of Washington because Defendant AREC is amenable to personal jurisdiction in this district. 28 U.S.C. §1391(c) ("For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced"). Pursuant to 28 U.S.C. §1391(a)(1), a civil action founded on diversity of citizenship may be brought in a judicial district where any defendant resides, if all defendants reside in the same State. Accordingly, dismissal pursuant to Fed. R. Civ. P. 12(b)(3) is improper at this time.

**III. CONCLUSION**

For the reasons set forth above, Plaintiff's Motion For Leave To File Supplemental Declaration Of Joseph Stanzak (ECF No. 18) is **GRANTED** and Defendant's Motion To Dismiss Amended Complaint (ECF No. 9) is **DENIED**.

**IT IS SO ORDERED**. The District Executive is directed to enter this order and forward copies to counsel.

**DATED** this ___19th___ of May, 2011.

*s/Lonny R. Suko*
--------------------------------
LONNY R. SUKO
United States District Judge

**ORDER DENYING MOTION TO DISMISS-** 16