1

2

3

4

5                       UNITED STATES DISTRICT COURT

6                       EASTERN DISTRICT OF WASHINGTON

7   THE GUY MITCHELL & BETTY J.
    MITCHELL FAMILY TRUST,                NO:  11-CV-0024-TOR
8
                        Plaintiff,        ORDER DENYING PLAINTIFF'S
9                                         MOTION FOR PARTIAL SUMMARY
                                          JUDGMENT
           v.
10
    ARTISTS RIGHTS ENFORCEMENT
11  CORPORATION, a New York
    Corporation,
12
                        Defendant.
13

14        BEFORE THE COURT is Defendant's Motion for Partial Summary

15  Judgment (ECF No. 60).  This matter was heard without oral argument on

16  November 13, 2012.  The Court has reviewed the relevant pleadings and

17  supporting materials, and is fully informed.

18                              BACKGROUND

19        This action arises from a contract dispute regarding the distribution of

20  royalty payments.  Plaintiff, The Guy Mitchell and Betty J. Mitchell Family Trust

    ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
    JUDGMENT ~ 1

1   ("Trust") seeks injunctive relief, declaratory judgment, and damages for alleged

2   breach of fiduciary duty, common law fraud, negligent misrepresentation,

3   conversion, "accounting," and breach of contract.  ECF No. 7.  Defendant, Artists

4   Rights Enforcement Corporation ("AREC"), counterclaimed for injunctive relief,

5   declaratory judgment, and damages for alleged breach of contract and *quantum*

6   *meruit*.  ECF No. 27.  Presently before the Court is Plaintiff's Motion for Partial

7   Summary Judgment on its claims for declaratory judgment and conversion.  The

8   Trust seeks declaratory judgment that (1) AREC is not entitled to any portion of

9   the Trust's regular royalty income from Sony, and (2) that in August 2009 AREC

10   wrongfully retained $3,010.34 of the Trust's royalty income from Sony for the

11   period ending June 30, 2009.  ECF No. 60.

12                                    FACTS

13         Guy Mitchell was a successful musician in the 1950s who released at least

14   nine records that have sold more than one million copies each.  Stanzak Decl., ECF

15   No. 61 at ¶ 3.  Before he died in 1999, Mr. Mitchell assigned to the Trust the rights

16   to collect music royalties under various recording contracts with Sony.  ECF No.

17   61 at ¶ 4.  Mrs. Mitchell was a co-trustee with her son Joseph Stanzak ("Stanzak")

18   until her death in November 2010, at which point Stanzak became sole trustee.  *Id*.

19   at ¶ 6.  For decades, Sony Music, Inc. and/or its predecessor-in-interest ("Sony")

20   has paid regular semi-annual royalties to Guy Mitchell or to the Trust.  *Id*. at ¶ 7.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 2

Payments were made in the month of August for the royalties accrued in the first six months of that year, and in the month of February for royalties accrued in the last six months of the previous year. *Id*.

The Trust also performed periodic audits revealing errors and underreporting of royalties from Sony, which would result in an additional lump sum payment to the Trust. The firm Webman & Associates ("Webman") was hired in 1995, 2000,[1] and 2004 to perform audits of the royalty payments, for which it was contracted to receive thirty percent (30%) of any additional payments Webman recovered over and above the regular semi-annual income. *Id*. at ¶ 8. In 2004, Webman negotiated a settlement of an audit of Sony whereby the Trust would receive a lump sum payment of approximately $70,000 less Webman's 30% fee. *Id*. at ¶ 9. According to the Trust, after a series of phone calls with AREC, Mrs. Mitchell and Stanzak decided not to accept the $70,000 offer and replaced Webman with AREC. *Id*. at ¶ 11.

On June 13, 2005, Mrs. Mitchell, on behalf of the Trust, and Chuck Rubin ("Rubin") on behalf of AREC, signed an agreement ("Agreement") for AREC to represent the Trust in investigating and recovering royalties due to the Trust from

---

[1] According to AREC, new terms negotiated by Webman as to the calculation of royalties were not in the Trust's favor, and resulted in lowering the amounts paid to the Trust. ECF No. 70 at 7.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 3

Sony.  ECF No. 61-1.  The Agreement also indicated that AREC would engage counsel and initiate litigation on behalf of the Trust.  *Id*.  The Agreement provided in relevant part that

> [i]n return for your services rendered hereunder, you shall be initially entitled to an on-going twenty-five (25%) percent of all sums and assets which are received from Sony BMG Music Entertainment (successor-in-interest to Columbia Records, CBS Records and Sony Music) beginning with any special payments made after June 30, 2005 and specifically with the period ending December 31, 2005.  However, in return for your services rendered hereunder and as a proximate result of your activities pursuant to this agreement, if you are successful through either negotiation or litigation in generating income that is in excess of the amount THE FAMILY TRUST would have received but for your involvement, you shall then be entitled to an on-going fifty (50%) percent of such sums and assets.  I further agree that all out-of-pocket expenses (including fees to additional local counsel) incurred by you in connection with the handling of THE FAMILY TRUST's claim(s) shall be reimbursed and deducted "off the top" from the amounts recovered before the division of our respective shares.

*Id*.[2]  The Trust also authorized AREC to collect and receive all royalties on behalf of the Trust.  Rubin Aff., ECF No. 74-5.  In October 2006, AREC arranged for counsel to represent the Trust in a lawsuit against Sony, and AREC coordinated the resulting litigation and participated in the settlement negotiations.  ECF No. 61 at ¶ 14-15.  In March of 2009, the lawsuit against Sony was settled for a one-time

---

[2] The Court notes that the Agreement does not address the propriety of verbal modifications to the Agreement, nor does it indicate that any such oral modifications must be made in writing.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 4

payment,[3] and the royalties accrued thereafter would continue to be governed by pre-existing recording contracts.  ECF No. 66 at 5.  According to the Trust, the annual average of royalties received from Sony after AREC began representing the Trust (from July 1, 2005 to December 31, 2011) is lower than the annual average before the representation began (from July 1, 1991 to June 30, 2005).[4]  ECF No. 96 at 3.

Although disputed by the Trust as irrelevant to its motion currently before the Court, AREC asserts additional "facts" worth noting to provide a full picture of the sequence of events in this case.  See ECF No. 103 at 6.  AREC started receiving royalty payments beginning with the period ending December 31, 2005.  ECF No. 70 at 10.  According to AREC, it agreed to defer its 25% fee from this period through June of 2008 after Stanzak explained that his mother Mrs. Mitchell

---

[3] Pursuant to the confidentiality agreement entered between AREC and Sony, the Court will not refer to the exact amount provided for in the settlement, nor will it reproduce the exact language from the settlement agreement.  For the same reason, the Court will also refrain from stating the specific amount of royalties recovered during any particular period aside from the amount specifically claimed by the Trust in the instant motion.

[4] AREC argues that royalty income for artists of Guy Mitchell's generation will decrease over time as the artist's popularity wanes.  ECF No. 70 at 6.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 5

1   was in ill health and needed the money.  *Id*.  Further, AREC contends that after it

2   successfully negotiated a lump-sum settlement amount in the Sony lawsuit, it

3   agreed to deduct a lesser amount than it was owed and deferred the balance,

4   including expenses advanced on the Trust's behalf, once again due to Mrs.

5   Mitchell's ill health.  *Id*. at 11-12.  AREC contends that in February of 2009,

6   Stanzak agreed that because of the recent settlement of the claims, AREC would

7   take its 25% fee out of that semi-annual royalty payment in order to pay itself and

8   the legal team engaged on behalf of the Trust.  *Id*.

9        According to the Trust, in August of 2009, AREC improperly retained 50%

10  of the Trust's royalty payment in the amount of $3,010.34.  See ECF No. 61-1, Ex.

11  3.  The Trust states that Stanzak contacted Rubin after receiving the payment and

12  insisted that AREC was not entitled to "any of the Trust's regular, semi-annual

13  royalty payments."  ECF No. 61 at ¶ 18.  AREC heavily disputes this version of

14  events, and contends that Rubin contacted Stanzak to inform him that it was taking

15  50% to start "making up for the deferral of its fee on the prior royalty payments,"

16  and that at no time did Stanzak protest AREC retaining 50% of this royalty

17  payment.  ECF No. 70 at 13.  Rather, according to AREC, Stanzak stated that he

18  wanted to come up with a "threshold amount" upon which to base AREC's

19  ongoing 50% fee (applicable only to recovery of royalties recovered as a proximate

20  result of AREC's involvement).  *Id*.  AREC maintains that the parties agreed that

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 6

1    they would use a base of $6,000 per year, meaning that AREC would only subject

2    anything in excess of the $6,000 to the higher 50% rate as opposed to the flat 25%

3    share.[5]  *Id.*  It is for this reason, AREC argues, that in February 2010 AREC did

4    not retain its 50% fee when it delivered the most recent royalty payment to the

5    Trust.  The letter accompanying this payment specifically states that AREC will

6    not take a fee "[a]s a result of the royalties received being less than the $6,000

7    yearly average." ECF No. 61-1, Ex. 4.  After this payment was sent, Stanzak

8    contacted Sony and requested that future royalty payments be sent directly to the

9    Trust.  ECF No. 61 at ¶ 20.

DISCUSSION

10

11   **A. Standard of Review**

12        The Court may grant summary judgment in favor of a moving party who

13   demonstrates "that there is no genuine dispute as to any material fact and that the

14   movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling

15   on a motion for summary judgment, the Court must only consider admissible

16   evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).  The

17   party moving for summary judgment bears the initial burden of showing the

18   _____
     [5] The Trust heavily disputes that there was a 25% flat fee provision included in the

19   Agreement.  ECF No. 99 at 9-12.  According to the Trust, such an agreement

20   would be "unconscionable."

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 7

1    absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

2    317, 323 (1986).  The burden then shifts to the non-moving party to identify

3    specific facts showing there is a genuine issue of material fact.  *See Anderson v.*

4    *Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla

5    of evidence in support of the plaintiff's position will be insufficient; there must be

6    evidence on which the jury could reasonably find for the plaintiff."  *Id*. at 252.

7          For purposes of summary judgment, a fact is "material" if it might affect the

8    outcome of the suit under the governing law.  *Id.* at 248.  Further, a material fact is

9    "genuine" only where the evidence is such that a reasonable jury could find in

10   favor of the non-moving party.  *Id.*  The Court views the facts, and all rational

11   inferences therefrom, in the light most favorable to the non-moving party.  *Scott v.*

12   *Harris*, 550 U.S. 327, 378 (2007).

13   **B. The Agreement**

14         The Trust seeks entry of declaratory judgment [6] that under the terms of the

15   Agreement signed by the Trust and AREC, (1) AREC is not entitled to any portion

16   [6] The Trust argues that an "actual controversy" exists as to their respective rights

17   under the Agreement.  ECF No. 66 at 8-10.  However, the Court finds it

18   unnecessary to conduct this analysis in light of its finding that genuine issues of

19   material fact preclude the issuance of a declaratory judgment at this stage of the

20   proceedings.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 8

of the Trust's regular royalty income from Sony and (2) AREC wrongfully

withheld $3,010.34 of the Trust's royalty income from Sony in August of 2009.

ECF No. 66 at 8.  The Court will examine each of these issues in turn.

**1. Whether AREC is entitled to any portion of the Trust's regular royalty payments**

To support their argument, the Trust asks the Court to limit its analysis only

to what it contends is the "relevant" part of the Agreement as follows:

> [I]n return for your [AREC's] services rendered hereunder and as a
> proximate result of your activities pursuant to this agreement, if you are
> successful through either negotiation or litigation in generating income that
> is in excess of the amount THE FAMILY TRUST would have received but
> for your involvement, you shall then be entitled to an ongoing fifty (50%)
> percent of such sums and assets.

ECF No. 61-1.  The Trust argues that there has been no increase in royalty income

due to the efforts of AREC, rather, income has decreased significantly after AREC

began accepting the royalty payments on behalf of the Trust.  ECF No. 66 at 11.

Moreover, according to the Trust, the terms of the settlement agreement AREC

negotiated with Sony did not increase or change the pre-existing royalty

provisions.  Thus, the Trust contends there is no evidence that as a proximate result

of AREC's activities the income was in excess of what the Trust would have

received without AREC's involvement, and AREC is not entitled to any portion of

the Trust's regular royalty income.

1    AREC responds that it did secure a concrete benefit for the Trust in its

2    negotiations with Sony, and that a general decline in royalties over a particular

3    period is not enough to support the argument that AREC did not generate income

4    in excess of the amount the Trust would have received but for AREC's

5    involvement.[7]  ECF No. 70 at 18-19; ECF No. 98 at 6-8.  Additionally, AREC

6    highlights a provision of the Agreement not cited by the Trust in their opening

7    brief that states:  "In return for [AREC's] services rendered hereunder, [AREC]

8    shall be initially entitled to an on-going 25% of all sums and assets which are

_____

9    [7] AREC also argues that the Trust failed to comply with LR 56.1(a) by not filing a

10   Statement of Material Facts, and asks the Court to strike Plaintiff's Motion for

11   Partial Summary Judgment.  ECF No. 70 at 16-17.  However, after AREC's

12   response was filed, the Court granted the Trust leave to file their Statement of

13   Material facts.  ECF No. 95. The Order granted AREC reciprocal leave to

14   supplement their previously filed Counterstatement of Material Facts.  Thus, all

15   appropriate documents were filed with no prejudice to either party.  The Court

16   declines to strike the instant motion.  The Court similarly finds AREC's argument

17   that this motion was brought before it had time to take depositions inapposite.  This

18   case has been pending for almost two years, and the Court fails to see how

19   AREC's failure to conduct depositions during this time is relevant to its decision

20   on the instant motion.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 10

received from Sony … beginning with any special payments made after June 30, 2005 and specifically with the period ending December 31, 2005."  ECF No. 61-1. According to AREC, this sentence entitles it to 25% of all royalties, regardless of whether such royalties were obtained through AREC's efforts.  ECF No. 70 at 20. Rubin, the President of AREC, testified that due to Mrs. Mitchell's health issues and financial situation, AREC agreed to defer money it legitimately earned, including the 25% fee owed under the Agreement, and remit the full amount of royalties to the Trust.  ECF No. 70-1 at ¶ 15-16.  Thus, AREC acknowledges that it has never withheld this 25% fee from any of the royalty payments received from Sony on behalf of the Trust.

The Trust vehemently claims that this particular provision of the Agreement "was intended only to address the increase in royalties that AREC represented to the Trust would occur simply upon Sony's learning of AREC's representation of the Trust." [8]  ECF No. 99 at 11.  The Trust highlights the word "initially" to argue

---

[8] The Trust also argues that AREC should not be permitted to argue that it is entitled to 25% of all the Trust's royalties since 2005, or to "deferred fees," because AREC raises these argument for the first time in opposition to the instant motion.  ECF No. 99 at 12.  However, the Trust cites no law to support this contention, and the Court finds no bar to AREC raising an admissible argument in

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 11

1   that the 25% was not intended to be apply to all royalty payments regardless of

2   AREC's role in securing those royalties.  Such an agreement, according to the

3   Trust, would be unconscionable with respect to the percentage of royalties received

4   by AREC.   The Trust also argues that AREC has never taken a 25% fee of any

5   post-settlement payments, and contends that AREC offers no evidence of any

6   agreement to defer fees to be collected at an unspecified future date.

7          First, the Court finds that the mere fact that overall royalty payments have

8   declined since AREC and the Trust signed the Agreement, is not sufficient for the

9   Court to find as a matter of law that AREC is not entitled to any regular royalty

10  payments received by the Trust.  The Court declines to apply this myopic

11  narrowing of the issues, which ignores evidence regarding the lump sum payments

12  negotiated by AREC with Sony, and testimony as to subsequent agreements

13  between Stanzak and Rubin.

14         The Court finds genuine issues of material fact exist on this issue that

15  preclude an entry of declaratory judgment on behalf of the Trust.  First, looking at

16  the entirety of the Agreement itself, there is a triable issue of fact as to whether

17  AREC was entitled to receive 25% of all royalty payments received by the Trust.

18  The mere fact that this provision of the Agreement includes the word "initially"

19  its opposition to the instant motion that it has not previously raised in its

20  counterclaim or elsewhere.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 12

1  does not imply a temporal or substantive limit on the circumstances under which

2  AREC would collect this 25% fee.  In fact, the Agreement states that AREC was

3  entitled to "an ongoing twenty-five (25%) percent" in return for services rendered.

4  The use of the word "ongoing" indicates to the Court that there is a triable issue of

5  fact as to whether AREC was entitled to some portion (25%) of the Trust's regular

6  royalty payments. Moreover, there is a genuine issue of fact as to whether the

7  parties verbally agreed to defer payment of the 25% fee due to Mrs. Mitchell's

8  health and financial issues, and the resulting legal effect that that these alleged

9  arrangements may have had on the original Agreement.[9]  For all of these reasons,

10  partial summary judgment as to whether or not AREC is entitled to *any* portion of

11  the Trust's regular royalty payments is denied.

## 2.  Whether AREC wrongfully retained $3,010.34 of the Trust's regular royalty income

13  According to the Trust, because AREC is not entitled to any percentage of

14  the regular royalty payments, AREC wrongfully retained 50% of the Trust's

15  royalties for the period ending June 30, 2009.  ECF No. 66 at 12.  The Trust

16  contends that the August 2009 royalty payment was generated under pre-existing

17  recording contracts that would have been paid regardless of AREC's negotiation of

---

[9] Neither party offers any analysis of which state's law governs this contract, or
whether that would materially affect the outcome of its interpretation.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 13

1  the settlement with Sony.  Under the terms of the Agreement, AREC may only

2  withhold 50% of royalty payments that are in excess of the amount the Trust would

3  have received but for AREC's involvement.  ECF No. 61-1.

4          As an initial matter, the Court notes that the parties greatly dispute whether

5  the post-Sony settlement terms were more advantageous than royalty terms before

6  AREC became involved.  AREC contends that it negotiated more favorable terms

7  in the calculation of royalties, however, AREC offers no quantifiable evidence of

8  the sum received by the Trust in excess of what it would have received but for the

9  involvement of AREC.  Thus, the Court cannot assess on the present record

10 whether any portion of the August 2009 royalty payment was owed to AREC

11 under the terms of the Agreement.

12         That said, the Court does find triable issues of fact as to whether AREC had

13 a lawful right to retain 50% of this royalty payment.  Rubin testified that due to

14 Mrs. Mitchell's failing health, AREC agreed to defer receipt of a portion of fees

15 owed to AREC from the lump-sum settlement payment made by Sony.  According

16 to AREC, a portion of these deferred fees would be included in the 50% category

17 of additional royalties obtained by AREC in its negotiations with Sony.  Rubin

18 Aff., ECF No. 70-1 at ¶ 21.  The Trust contends that AREC fails to quantify the

19 deferred fees.  However, as to the particular fees allegedly owed to AREC from the

20 lump-sum settlement payment, AREC does propose a specific dollar amount of

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 14

how much it was due to receive, and how much less than that amount it was

actually paid. *Id*.

Rubin also testified that he contacted Stanzak, and that Stanzak agreed that

AREC could deduct 50% of the August 2009 payment in order to make up for the

deferral of its fee on prior royalty payments.  After the August 2009 payment was

sent to Stanzak, with the 50% fee deducted, Rubin testified that he and Stanzak

verbally agreed that from that point on, only future annual royalty payments in

excess of $6,000 would be subject to the 50% share.  ECF No. 70-1at ¶ 25.  AREC

offers no evidence of any written modifications of the Agreement.  However, the

letter sent with the subsequent semi-annual royalty payment in February 2010

indicates that AREC kept no portion of the royalty payment "[a]s a result of the

royalties received being less than the $6,000 yearly average." ECF No. 61-1, Ex. 4.

Purportedly, then, AREC did not retain a fee because this $357.40 semi-annual

payment was well below the $6,000 threshold.[10]

Because it is undisputed that the alleged verbal agreement to enact a

threshold amount of $6,000, anything over which would be subject to AREC's

---

[10] The Court is perplexed by AREC's failure to retain the 25% fee it alleges is due

from every royalty payment under the terms of the original contract (see above).

The Trust also notes that in neither of these letters does AREC refer to fees being

deferred or collected at some later date. ECF No. 99 at 10-11.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 15

50% fee, did not occur until after the August 2009 payment was made, it is not relevant to the Court's determination of whether AREC wrongfully withheld 50% of that particular royalty payment. However, Rubin's testimony that Stanzak agreed to the 50% fee deduction from the August 2009 royalty payment is enough to create a genuine issue of material fact as to whether there was a valid modification of the Agreement as to this single payment. Therefore, in the light most favorable to AREC, on this record, the Court cannot find as a matter of law that AREC wrongfully retained $3,010.34 of the Trust's regular royalty income.

Partial summary judgment is denied and the Trust is not entitled to declaratory judgment on either of the issues before the Court.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Partial Summary Judgment, ECF No. 60, is
   **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** this 12th day of December, 2012.

*s/ Thomas O. Rice*

THOMAS O. RICE
United States District Judge

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 16