1

2

3

4

5

6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

7 THE GUY MITCHELL & BETTY J.
MITCHELL FAMILY TRUST,

8

9                              Plaintiff,

v.

10

ARTISTS RIGHTS ENFORCEMENT

11 CORPORATION, a New York
Corporation,

12

                               Defendant.

13

NO:  11-CV-0024-TOR

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT
AND CROSS COMPLAINANT'S
MOTION FOR SUMMARY
JUDGMENT

14        BEFORE THE COURT is Defendant and Cross Complainant's Motion for

15 Summary Judgment (ECF No. 118).  This matter was heard without oral argument

16 on February 21, 2013.  The Court has reviewed the relevant pleadings and

17 supporting materials, and is fully informed.

18                              BACKGROUND

19        This action arises from a contract dispute regarding the distribution of

20 royalty payments.  Plaintiff, The Guy Mitchell and Betty J. Mitchell Family Trust

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AND
CROSS COMPLAINANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

("Trust") seeks injunctive relief, declaratory judgment, and damages for alleged

breach of fiduciary duty, common law fraud, negligent misrepresentation,

conversion, accounting, and breach of contract.  ECF No. 7.  Defendant, Artists

Rights Enforcement Corporation ("AREC"), counterclaimed for injunctive relief,

declaratory judgment, and damages for alleged breach of contract and *quantum*

*meruit*.  ECF No. 27.  Presently before the Court is Defendant's Motion for

Summary Judgment requesting that the Trust's Complaint be dismissed and

judgment entered in favor of AREC on its cross-complaint.

## FACTS

AREC represents recording artists, songwriters, and small music publishers

in negotiations with record companies and music publishers over royalty disputes.

*See* Defendant and Cross-Complainant's Local Rule 56.1(b) Statement of

Undisputed Material Facts, ECF No. 120 ("Def. SOF") at ¶ 1.  The Trust is the

successor-in-interest to recording artist Guy Mitchell, whose heirs are still paid

semi-annual royalty payments by Sony Music, Inc. and/or its predecessor-in-

interest ("Sony") from the sales of recordings that bear his vocal performances.

The Trust has received two types of royalties from Sony: (1) regular royalties

received semi-annually, and (2) previously unreported or underreported royalties

from audits of the Guy Mitchell account with Sony.  Stanzak Decl., ECF No. 130

at ¶ 2.  According to the Trust, from 1991 through June 2005 the regular semi-

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AND
CROSS COMPLAINANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

annual royalties totaled an average of $14,000 annually, but decreased sharply after AREC became involved in 2005. *Id*. at ¶¶ 2, 12.

The firm Webman & Associates ("Webman") was hired in 1995, 2000, and 2004 to perform audits of the royalty payments to determine if the Trust had been underpaid in prior royalty payments rendered, for which it was contracted to receive thirty percent (30%) of any additional payments Webman recovered over and above the regular semi-annual income. In its 2000 audit, Webman identified almost $30,000 in monies owing to the Trust, and negotiated new terms to the Plaintiff's recording contracts. The parties dispute whether the "new terms" negotiated by Webman were favorable to the Trust.[1]

In 2004, Webman negotiated another settlement whereby the Trust would receive a lump sum payment of approximately $70,000 less Webman's 30% fee. After a series of phone calls between AREC and the Trust, the Trust declined to accept the $70,000 settlement offer. Although disputed by AREC, the Trust contends that the president of AREC Chuck Rubin ("Rubin") "persuaded" the

---

[1] According to AREC, the terms of the 2000 settlement included agreements to calculate royalties based on the lower "price published to dealers" and change the packaging discount to an amount in excess of what was included in the Mitchell Recording Agreement. Def. SOF at ¶¶ 19-21.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AND CROSS COMPLAINANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

1    Trust to switch from Webman to AREC by promising to recover millions of dollars

2    in unpaid royalties and quadrupling the amount of regular royalties.  Stanzak Decl.,

3    ECF No. 130 at ¶¶ 7, 11.  In contrast, AREC recalls that Stanzak and Mrs. Mitchell

4    retained AREC to represent the Trust because they were concerned about royalties

5    being withheld and losing more favorable contractual terms (as allegedly happened

6    in the 2000 audit).  Def. SOF at ¶¶ 24, 26-27.  AREC also maintains that it told

7    Mrs. Mitchell the contingent fee in the Agreement would need to include a

8    guaranteed share of future royalties (25%), because there was no expectation of a

9    substantial recovery in a lawsuit against Sony.  *Id.* at ¶ 35.  However, the Trust

10   insists that it never agreed to pay any portion of royalties other than for increases

11   obtained as a result of AREC's activities.  ECF No. 130 at ¶ 9.

12        On June 13, 2005, Mrs. Mitchell, on behalf of the Trust, and Rubin, on

13   behalf of AREC, signed an agreement ("Agreement") under which the Trust

14   retained AREC to act on behalf of the Trust "in connection with the investigation

15   into and collection and/or recovery of any and all royalties and/or other assets

16   which are or may be due and owing to GUY MITCHELL as a CBS recording

17   artist."  ECF No. 121-5.  AREC agreed to use their "best efforts to obtain from

18   music companies and all others who are or may be liable to THE FAMILY

19   TRUST … an accounting for and collection of such royalties and other rights

20   which are or may be due …"  *Id.*  The Agreement indicated that AREC would

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AND
CROSS COMPLAINANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

1    engage counsel and initiate litigation on behalf of the Trust. *Id.*  In relevant part,

2    the Agreement also provided that

> [i]n return for your services rendered hereunder, you shall be initially entitled to an on-going twenty-five (25%) percent of all sums and assets which are received from Sony BMG Music Entertainment (successor-in-interest to Columbia Records, CBS Records and Sony Music) beginning with any special payments made after June 30, 2005 and specifically with the period ending December 31, 2005.  However, in return for your services rendered hereunder and as a proximate result of your activities pursuant to this agreement, if you are successful through either negotiation or litigation in generating income that is in excess of the amount THE FAMILY TRUST would have received but for your involvement, you shall then be entitled to an on-going fifty (50%) percent of such sums and assets.  I further agree that all out-of-pocket expenses (including fees to additional local counsel) incurred by you in connection with the handling of THE FAMILY TRUST's claim(s) shall be reimbursed and deducted "off the top" from the amounts recovered before the division of our respective shares.

*Id.*[2]  Finally, the Trust authorized AREC to request documents from Sony regarding royalty payments, and to collect and receive all royalties on behalf of the Trust.  ECF No. 121-6.

AREC started receiving royalty payments on behalf of the Trust beginning with the period ending December 31, 2005.  According to AREC, it agreed to defer its 25% fee from this period through June of 2008 after Stanzak explained that his mother Mrs. Mitchell was in ill health and needed the money, and continued to

---

[2] The Court notes that the Agreement does not address the propriety of verbal modifications to the Agreement, nor does it indicate that any such oral modifications must be made in writing.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AND CROSS COMPLAINANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

defer its fee for the subsequent semi-annual reporting periods through June 2008. Def. SOF at ¶¶ 46-49. The Trust contends that it never discussed deferred fees, and never received any oral or written suggestion from Rubin that AREC was entitled to 25% of the Trust's regular royalties. ECF No. 130 at ¶ 18-19.

Pursuant to the Agreement, a lawsuit was brought against Sony and Webman in 2005. In early 2009, the lawsuit against Sony was settled for a one-time payment,[3] and did not include any changes or modifications to the calculation of royalty payments going forward. Def. SOF at ¶¶ 56-57. The Trust received a large portion of the one-time payment for previously unpaid royalties, with a considerably smaller portion of the payment retained by AREC.[4] Subsequently, AREC withheld 25% from the regular semi-annual royalty payment sent in February 2009, allegedly to "make up for past deferments." *Id*. at ¶ 55; ECF No. 130 at ¶ 20. Under similarly disputed circumstances, AREC then withheld 50% from the semi-annual August 2009 payment. At this point, the parties discussed identifying a threshold royalty amount to calculate when AREC was entitled to its

---

[3] Pursuant to the confidentiality agreement entered between AREC and Sony, the Court will not refer to the exact amount provided for in the settlement.

[4] Again, the parties dispute whether AREC was owed 50% of the one-time settlement payment under the terms of the Agreement and whether any verbal agreement was made to defer those fees. *See* ECF No. 129 at ¶¶ 52-53, 59.

50% fee on any increase in royalties it proximately caused.  AREC contends the

agreed upon base was $6,000 annually, while the Trust maintains the base was

$12,000 annually.  ECF No. 129 at ¶¶ 63-65.  In February of 2010, AREC sent a

letter to the Trust indicating that the royalties for that period totaled $357.40, and

noted that no AREC fee was deducted.  ECF No. 130-5 at 36.  At some point after

this letter was sent, the Trust contacted Sony and directed that all further royalty

payments be sent directly to the Trust.

DISCUSSION

**A. Standard of Review**

The Court may grant summary judgment in favor of a moving party who

demonstrates "that there is no genuine dispute as to any material fact and that the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling

on a motion for summary judgment, the Court must only consider admissible

evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).  The

party moving for summary judgment bears the initial burden of showing the

absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986).  The burden then shifts to the non-moving party to identify

specific facts showing there is a genuine issue of material fact.  *See Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AND
CROSS COMPLAINANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. Further, a material fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## B. AREC's Contract Counterclaim

### 1. Applicable Law

The Agreement does not include a choice of law provision. AREC argues that New York law should apply, while the Trust contends that Washington law governs. Federal courts sitting in diversity "must look to the forum state's choice of law rules to determine the controlling substantive law." *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002). Under Washington law, deciding applicable state law is a two-part inquiry. "Before a court will conduct a conflict of law analysis, the party seeking to apply foreign law must show that an actual conflict exists between the presumptive Washington law and the law of the foreign state." *Alaska Nat. Ins. Co. v. Bryan*, 125 Wash. App. 24, 30 (Ct. App. 2004); *see also Burnside v. Simpson Paper Co.*, 123 Wash.2d 93, 100 (1994). If the state's laws do not

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AND CROSS COMPLAINANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

1   conflict, presumptive local law is applied.  *Seizer v. Sessions*, 132 Wash.2d 642,

2   648-49 (1997).  Conversely, if there is an actual conflict, the applicable law is

3   determined by which state has the "most significant relationship" to the specific

4   issue.  *Williams v. State*, 76 Wash. App. 237, 241 (1994).

5          Here AREC fails to uphold its burden, as the party seeking to apply foreign

6   law, to show that an actual conflict exists between New York and Washington law.

7   The Trust highlights this omission, and argues that there is no actual conflict

8   between the laws of these two states on the elements a plaintiff must prove in a

9   breach of contract action.  *Compare Lehrer v. State, Dept. of Social and Health*

10  *Servs.*, 101 Wash. App. 509, 516 (Ct. App. 2000)("[g]enerally, a plaintiff in a

11  contract must prove a valid contract between the parties, breach, and resulting

12  damage."), *and Willener v. Sweeting*, 107 Wash.2d 388, 394 (1986)("[i]f a contract

13  requires performance by both parties, the party claiming nonperformance of the

14  other must establish as a matter of fact the party's own performance."), *with*

15  *Kramer v. Lockwood Pension Services, Inc.*, 653 F. Supp. 2d 354, 386 (S.D.N.Y.

16  2009)(*citing Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2nd Cir. 2000))("it

17  is well-settled under New York law that to establish a claim of breach of contract,

18  a plaintiff must prove the following elements: (1) the existence of a contract; (2)

19  plaintiff's performance of the contract; (3) defendant's breach of the contract; and

20  (4) damages suffered as a result of the breach."). Again, AREC offers no argument

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AND
CROSS COMPLAINANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

1    or supporting case law to indicate an actual conflict between Washington and New

2    York law.  Thus, the Court will apply Washington law to the Defendant's counter

3    claim for breach of contract.

4            Washington follows the "objective manifestation" theory of contracts, under

5    which "we attempt to determine the parties' intent by focusing on the objective

6    manifestations of the agreement, rather than on the unexpressed subjective intent

7    of the parties."  *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wash.2d 493,

8    503-04 (2005)(generally give words in contract their ordinary, usual, and popular

9    meaning unless the entirety of the contract demonstrates a contrary intent).

10   Moreover, in order to ascertain the parties' intent, extrinsic evidence is admissible

11   as to the entire circumstances under which the contract was made.  *Berg v.*

12   *Hudesman*, 115 Wash.2d 657, 667 (1990).

13           As an initial matter, the parties do not appear to dispute the existence of a

14   contract.  Further, while each party summarily contends that the Agreement at

15   issue is either ambiguous (the Trust) or unambiguous (AREC), neither party

16   provides any further argument or legal support as to why or how the terms of the

17   Agreement are ambiguous.[5]  For instance, the Trust offers no argument that any

_____

18   [5] AREC does include a footnote anticipating an ambiguity assertion by the Trust,

19   and cursorily argues that under New York law extrinsic evidence cannot be

20   considered until the Court determines the contract is ambiguous.  ECF No. 119 at

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AND
CROSS COMPLAINANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

1   specific terms in the Agreement are, or are not, uncertain or capable of being

2   understood to have more than one meaning.  *See Mayer v. Pierce County Med.*

3   *Bureau, Inc.*, 80 Wash. App. 416, 421 (Ct. App. 1995)(a provision is not

4   ambiguous simply because the parties suggest opposing meanings).  Rather, the

5   Trust repeatedly argues only that it never agreed to AREC retaining any portion of

6   the Trust's regular royalty income when negotiating the terms of the Agreement.

7   ECF No. 128 at 6.  While these factual assertions may implicate issues regarding

8   the formation of the Agreement, the Court declines to address hypothetical

9   arguments not properly developed by the parties as to the any alleged ambiguity of

10  the contract.

11      Thus, the question remaining for the Court is whether AREC successfully

12  establishes no genuine issues of material fact exist as to the remaining three

13  elements on its breach of contract claim.

14      2.  Performance by AREC

15      Whether AREC fully performed its obligations under the Agreement is an

16  issue of fact.  *Reynolds Metals Co. v. Electric Smith Const. & Equip. Co.*, 4 Wash.

17  App. 695, 698 (Ct. App. 1971).  Under the express terms of the Agreement, AREC

18  was retained to investigate and collect royalties and/or other assets due to the

19  10 n. 2.  However, as the Court has determined that Washington law applies, this

20  argument is inapposite.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AND
CROSS COMPLAINANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

1    Trust, and use its "best efforts" to obtain "an accounting for and collection of such

2    royalties and other rights" due to the Trust.  ECF No. 121-5.  According to AREC,

3    it successfully ensured that Sony remitted payment for all royalty amounts

4    outstanding to the Trust after the 2004 audit, and resisted making additional royalty

5    rate concessions during the negotiating process that would further reduce royalty

6    payments.  ECF No. 120 at ¶¶ 27-30.

7         The Trust does not dispute that AREC successfully negotiated a settlement

8    with Sony for some royalty payments outstanding through the period ending in

9    June of 2008.  ECF No. 129 at ¶ 56.  However, the Trust notes that this amount did

10   not include *regular* semi-annual royalties, and argues that AREC did fulfill its

11   contractual obligation to conduct an accounting regarding the actual tracking and

12   calculation of royalties.  Thus, the Trust contends that the actual figures used

13   during the settlement negotiations underestimated amounts due to the Trust, and

14   disputes AREC's assertion that it obtained the full amount of monies due to the

15   Trust through June of 2008.  Additionally, the Trust disputes that AREC

16   successfully resisted Sony's demands to make additional adverse modifications,

17   and that AREC "saved" it from paying $20,000 to Webman for the 2004 audit. [6]

18   [6] The Trust also maintains AREC did not perform under the Agreement because a

19   triable issue of fact was identified in the Court's previous ruling regarding whether

20   AREC was lawfully entitled to keep 50% of the August 2009 regular royalty

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AND
CROSS COMPLAINANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

1    Although AREC contends it was not required to execute an audit settlement

2    to obtain the monies identified in the 2004 audit, the Court finds a genuine issue of

3    fact remains as to whether AREC performed its obligation to conduct the

4    "accounting" expressly required under the terms of the Agreement. *See* ECF No.

5    121-5.  AREC does not address this portion of the Agreement, much less uphold its

6    burden on summary judgment to show no genuine issue of material fact exists as to

7    whether this "accounting" was performed.  It is undisputed that AREC obtained

8    some portion of royalties owed to the Trust, however, the Court finds triable issues

9    of fact remain as to whether AREC obtained the full amount of monies due under

10   the Mitchell Recording Contracts through June 2008 by using its "best efforts" to

11   obtain "*an accounting for* and collection of such royalties and other rights." *See*

12   *id*. (emphasis added)  Further, the Court finds AREC fails to show no genuine

13   issue of fact exists as to whether it resisted demands from Sony that the Trust make

14   adverse modifications to the calculation of its royalty payments as a part of the

15   settlement negotiation.  Aside from Rubin's general declaration that AREC

16   successfully opposed modifications, AREC provides no evidence of the precise

17   adverse changes that would have transpired as a result of the 2004 audit by

18

19   payment.  ECF No. 128 at 15.  The Court finds it unnecessary to address its

20   previous finding in light of the triable issues of fact identified below.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AND
CROSS COMPLAINANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

Webman, had AREC not taken over the negotiations, or the extent to which those modifications would have decreased future royalty payments.

As to AREC's final assertion that it performed its duties under the Agreement by "saving" the Trust the $20,000 it would have paid Webman for the 2004 audit, the Court finds no portion of the Agreement addressing any duty imposed on AREC to save the Trust money in the course of its business dealings with Webman or any other company. Rather, AREC was charged solely with collecting royalties and other assets due to the Trust. While this alleged $20,000 "savings" might have been a fortunate side effect of AREC taking over the negotiations, it is irrelevant to evaluating AREC's performance under the Agreement. For all of these reasons, in the light most favorable to the Trust, the Court finds that whether AREC fully performed its obligations under the Agreement is a matter to be decided by the trier of fact. [7]

**C. The Trust's Fraud Claims**

For the purposes of this motion, the parties agree that Washington law applies to the Trust's fraud claims. Under Washington law, the nine elements of a common law fraud claim must be established by clear, cogent and convincing evidence, including: (1) a representation of an existing fact; (2) its materiality; (3)

---

[7] In light of this holding, it is unnecessary for the Court to address the final two elements of AREC's breach of contract counterclaim.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AND CROSS COMPLAINANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

its falsity; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person to whom it was made; (6) ignorance of its falsity on the part of the person to whom it is made; (7) the latter's reliance on the truth of the representation; (8) his right to rely upon it; and (9) his consequent damage. *Turner v. Enders*, 15 Wash. App. 875, 878 (Ct. App. 1976). AREC limited its argument to four elements it contends the Trust cannot prove.

        1. <u>AREC's Knowledge of Falsity</u>

        Defendant AREC argues that Plaintiff cannot sustain its burden to show by clear, cogent and convincing evidence that Rubin's alleged statement that the Trust was owed "millions" by Sony in unpaid or underreported royalties was made with knowing falsity. AREC contends that these alleged statements were made prior to the execution of the Agreement and the authorization for AREC to access Sony's accounting records. Thus Rubin could not have known the actual amount of underreporting and could not have made a false statement of fact.

        Washington courts have held that "a person cannot defeat recovery by a showing that he did not know his representations were false or that he believed them to be true, if he made them recklessly and carelessly without knowing for certain whether they were true or false." *Swanson v. Solomon*, 50 Wash.2d 825, 828 (1957). As indicated by the Trust, Rubin testified as to his many years representing recording artists in negotiations with record companies and music

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AND CROSS COMPLAINANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

companies over royalty disputes, and now contends that royalties for artists in Guy Mitchell's era decreases over time as the artists' popularity wanes.  Rubin Decl., ECF No. 121 at ¶¶ 3, 5.  Moreover, Rubin allegedly stated that the Trust was owed millions of dollars "based upon his initial investigation."  ECF No. 7 at ¶ 26.  The Court finds genuine issues of fact remain as to the extent of knowledge gained by AREC as a result of this alleged investigation, and whether Rubin's alleged statements were made carelessly or recklessly without knowing for certain whether they were true or false.

### 2. Ignorance of Falsity on the Part of the Trust

AREC argues only that Mrs. Mitchell was not ignorant of the true amount of royalties owing to the Trust because at the time Mrs. Mitchell retained AREC, because she knew that the written audit report from Webman indicated Sony owed the Trust approximately $70,000.  The Court finds this knowledge is not sufficient to show no genuine issue of material fact as to whether the Trust was ignorant to the falsity of alleged statements made by Rubin that as soon as Sony found out the Trust was represented by AREC, the amount of semi-annual payments would quadruple and AREC could potentially recover millions of dollars in unpaid royalties.  The fact that the most current audit revealed only $70,000 dollars owed to the Trust does not entirely foreclose Mrs. Mitchell's alleged ignorance to the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AND CROSS COMPLAINANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

1  falsity of the statement that AREC could uncover a substantial amount of money in

2  excess of the $70,000 reported by Webman.

3           3.  The Trust's Reliance on the Truth of the Representation

4           Under Washington law, a fraud plaintiff must prove that he justifiably relied

5  on the defendant's misrepresentations.  *See Stiley v. Block*, 130 Wash.2d 486, 505

6  (1996); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007)(applying

7  Washington law and noting "[w]hether a party justifiably relied upon a

8  misrepresentation is an issue of fact.").  A party's reliance must be "reasonable

9  under the surrounding circumstances;" determination of which requires a fact-

10  intensive analysis of considerations such as plaintiff's education, experience and

11  relative sophistication, and whether the defendant had special expertise.  *Swartz*,

12  476 F.3d at 762 (citations omitted).

13          AREC argues that the Trust could not reasonably rely on Rubin's alleged

14  representations that he could quadruple the semi-annual royalties and/or recover

15  millions in unpaid royalties because: (1) Stanzak represented that the Trust was

16  receiving $12,000 a year in artist royalties, (2) past audits by Webman of five year

17  periods of underpaid royalties never indicated amounts in excess of six figures, and

18  (3) Rubin told Mrs. Mitchell that it would require a guaranteed 25% fee due to the

19  small anticipated recovery.  ECF No. 119 at 14-15.  Moreover, according to

20  AREC, there is no evidence that Mrs. Mitchell relied upon the alleged

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AND
CROSS COMPLAINANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

representations.   The Trust responds that Rubin told Mrs. Mitchell and Stanzak that "based on his initial investigation," he discovered that Webman only renegotiated the royalty rates and deductions from revenue instead of conducting an audit.  ECF No. 7 at ¶¶ 25-26.  Rubin also allegedly stated that he had sued Sony so many times that as soon as Sony found out AREC was involved, the semi-annual payments would quadruple and the audit would reveal millions in unreported royalty income.  *Id*. at ¶ 29.

Here, viewed in the light most favorable to the Trust, the Court finds genuine issues of fact remain as to whether the Trust justifiably relied on Rubin's alleged statements.  While the Trust certainly had knowledge of the current state of royalty payments, AREC offers no evidence that Stanzak or Mrs. Mitchell had experience or sophistication in negotiating with Sony to recover unpaid royalties or negotiating new terms on royalty rates or deductions from revenue.  Previous audits of the royalty income were conducted on behalf of the Trust by Webman, and Mrs. Mitchell contacted AREC for assistance when she questioned the effect the 2004 settlement offer might have on her future royalty income.  It cannot be disputed that AREC had special expertise in negotiating with record companies and music companies over royalty disputes.  Rubin Decl., ECF No. 121 at ¶ 3.  Thus, the Court finds a determination of whether the Trust justifiably relied on Rubin's alleged representations is best left to the trier of fact.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AND CROSS COMPLAINANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

4. <u>Damages</u>

Under Washington law, an essential element of a fraud claim is plaintiff's consequent damage from the fraud. *Blanton v. Mobil Oil Corp.*, 721 F.2d 1207, 1218 (9th Cir. 1983)("[f]ailure to prove this essential element is fatal to a fraud claim."). A plaintiff is entitled to recover damages for losses proximately caused by the fraudulent conduct. *Buttnick v. Clothier*, 43 Wash.2d 667, 673 (1953). AREC argues the Trust failed to assert any evidence of damages from the alleged fraud, and offers Stanzak's testimony that he had no evidence that the Trust was due more money than it received as part of the settlement agreement negotiated by AREC. ECF No. 122-1 at 77-78. The Trust contends that as a result of its reasonable reliance on Rubin's representations, it incurred damages, including: (1) causing the termination of the Trust's relationship with Webman, (2) AREC wrongfully retaining a portion of royalty payments due to the Trust, and (3) Sony putting a "hold" on royalties due to the Trust until the conclusion of the instant litigation. ECF No. 128 at 19.

As an initial matter, the Court finds no evidence that the termination of the Trust's relationship with Webman resulted in any damage to the Trust. The Trust was not required to pay the 30% fee to Webman for the 2004 audit, and there is no indication that the Trust was prevented from to re-hiring Webman at any time if they wished to retain their services. Similarly, the "hold" on royalties due to the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AND CROSS COMPLAINANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

1   Trust was solely caused by the instant litigation, not the underlying common law

2   fraud claim.  There is no indication that the Trust will not receive those royalties at

3   the conclusion of the action presently before the Court.  Finally, the Trust argues

4   that Rubin's statements caused the Trust to authorize AREC to collect royalties,

5   and AREC subsequently unlawfully retained royalties owed to the Trust.

6   However, the Court finds no evidence that the alleged fraudulent conduct of Rubin

7   was the proximate cause of AREC wrongfully withholding a portion of royalties

8   due to the Trust.  Rather, the alleged withholding of these royalties was the result

9   of the alleged breach of contract claim, pled simultaneously with the common law

10  fraud claim and currently pending before the Court.  At no time does the Trust

11  claim, or provide evidence showing, that it could be collecting more than it

12  received as a result of AREC's negotiations with Sony, much less that the millions

13  of dollars on unpaid royalties or a quadrupling of the semi-annual royalty

14  payments as allegedly represented by Rubin.  The Trust does not sustain its burden

15  on summary judgment to show a genuine issue of material fact exists as to

16  damages proximately caused by the fraudulent conduct.  Thus, the Court finds as a

17  matter of law that the Trust cannot prove damages.

18        Moreover, under Washington law, a plaintiff claiming negligent

19  misrepresentation must prove by clear, cogent and convincing evidence that "false

20  information proximately caused the plaintiff damages." *Ross v. Kirner*, 162

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AND
CROSS COMPLAINANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

Wash.2d 493, 499 (2007).  The Court has already found no genuine issue of fact exists as to damages proximately caused by any fraudulent conduct or information. Thus, the negligent misrepresentation claim similarly fails as a matter of law.  Due to the Trust's failure to prove the essential element of damages, summary judgment is granted to AREC on the common law fraud and negligent misrepresentation claims.

As a final matter, AREC seeks dismissal of the Trust's Complaint in its entirety.  In addition to the common law fraud and negligent misrepresentation claims dismissed above, the Trust seeks declaratory judgment and injunctive relief, and asserts claims for breach of fiduciary duties, conversion, accounting, and breach of contract.  ECF No. 7.  AREC makes no argument regarding the conversion claim.  Moreover, as to the accounting and breach of contract claims, AREC argues simply that granting summary judgment on its breach of contract counter-claim would render these claims moot.  ECF No. 119 at 13 n. 4.  Not only is this bold assertion completely unsupported by legal authority, but, as indicated above, the Court has denied summary judgment on AREC's breach of contract counter claim.  Thus, even assuming the credibility of its *quid pro quo* argument, AREC is not entitled to summary judgment on the Trust's breach of contract and accounting claims.  Finally, AREC makes the cursory argument that the Trust's breach of fiduciary duties claim should be dismissed because AREC is not an

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AND
CROSS COMPLAINANT'S MOTION FOR SUMMARY JUDGMENT ~ 21

accounting firm and "the contract does not require (nor does it state) that an audit be conducted." ECF No. 119 at 17 n. 6. Again, as indicated above, the Court has found a genuine issue of material fact as to whether AREC used its "best efforts" to obtain "an accounting for and collection of such royalties and other rights." *See* ECF No. 121-5. Thus, summary judgment is denied on the Trust's breach of fiduciary duties claim.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Defendant and Cross Complainant's Motion for Summary Judgment, ECF No. 118, is **GRANTED** as to Plaintiff's claims of common law fraud and negligent misrepresentation against Defendant, and **DENIED** with respect to all other claims. Summary Judgment on Defendant and Cross Complainant's breach of contract claim is **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** March 7, 2013.



THOMAS O. RICE
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT AND CROSS COMPLAINANT'S MOTION FOR SUMMARY JUDGMENT ~ 22