UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| THE GUY MITCHELL & BETTY J. MITCHELL FAMILY TRUST,<br><br>                              Plaintiff,<br><br>        v.<br><br>ARTIST RIGHTS ENFORCEMENT CORPORATION, a New York Corporation,<br><br>                              Defendant. | NO:  11-CV-0024-TOR<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION |

BEFORE THE COURT is Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 165).  This matter was submitted for consideration without oral argument.  The Court has reviewed the briefing and the record and files herein, and is fully informed.

Defendant Artist Rights Enforcement Corporation ("AREC") moves the court under Fed. R. Civ. P. 12(h)(3) for an order determining that the Court lacks subject matter jurisdiction, arguing that Plaintiff the Guy Mitchell & Betty J.

Mitchell Family Trust ("the Trust") has failed to meet the amount-in-controversy requirement of the diversity statute. ECF No. 165 at 2.

BACKGROUND

Guy Mitchell was a successful musician in the 1950s who released at least nine records that have sold more than one million copies each. ECF No. 61 at 2. Before he died in 1999, Mr. Mitchell assigned to the Trust the rights to collect music royalties under various recording contracts with Sony. *Id*. Mrs. Mitchell was a co-trustee with her son Joseph Stanzak ("Stanzak") until her death in November 2010, at which point Stanzak became sole trustee. *Id*. For decades, Sony Music, Inc. and/or its predecessor-in-interest ("Sony") has paid regular semi-annual royalties to Guy Mitchell or to the Trust. *Id*. The Trust also performed periodic audits revealing errors and underreporting of royalties from Sony, which would result in an additional lump sum payment to the Trust.

On June 13, 2005, Mrs. Mitchell, on behalf of the Trust, and Chuck Rubin ("Rubin") on behalf of AREC, signed an agreement ("Agreement") for AREC to represent the Trust in investigating and recovering royalties due to the Trust from Sony. ECF No. 61-1. The Agreement provided in relevant part that

> [i]n return for your services rendered hereunder, you shall be initially entitled to an on-going twenty-five (25%) percent of all sums and assets which are received from Sony BMG Music Entertainment (successor-in-interest to Columbia Records, CBS Records and Sony Music) beginning with any special payments made after June 30, 2005 and specifically with

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 2

the period ending December 31, 2005.  However, in return for your services rendered hereunder and as a proximate result of your activities pursuant to this agreement, if you are successful through either negotiation or litigation in generating income that is in excess of the amount THE FAMILY TRUST would have received but for your involvement, you shall then be entitled to an on-going fifty (50%) percent of such sums and assets.  I further agree that all out-of-pocket expenses (including fees to additional local counsel) incurred by you in connection with the handling of THE FAMILY TRUST's claim(s) shall be reimbursed and deducted "off the top" from the amounts recovered before the division of our respective shares.

ECF No. 7-1.  The Trust also authorized AREC to collect and receive all royalties on behalf of the Trust.  ECF No. 74-5.   In October 2006, AREC arranged for counsel to represent the Trust in a lawsuit against Sony, and AREC coordinated the resulting litigation and participated in the settlement negotiations.  ECF No. 61 at 4.  In March of 2009, the lawsuit against Sony was settled for a one-time payment, and the royalties accrued thereafter would continue to be governed by pre-existing recording contracts.  ECF No. 66 at 5.  According to the Trust, in August 2009, AREC improperly retained 50 percent of the Trust's royalty payment in the amount of $3,010.34.  *See* ECF No. 61-1.

The Trust sued AREC in diversity, alleging breach of contract, breach of fiduciary duty, common law fraud, negligent misrepresentation and conversion. ECF No. 7. Plaintiff is a trust currently existing under the laws of the State of Washington. Defendant is a New York corporation with its principal place of business in Westchester County, New York. Plaintiff's Amended Complaint

1    alleges that Plaintiff will be deprived of more than $75,000 "as a result of

2    Defendant's unlawful retention of royalties owed to Plaintiff." ECF No. 7 at 3.

3    　　　　Shortly after this action commenced, Defendant filed a motion to dismiss,

4    alleging among other things that Plaintiff could not satisfy the amount in

5    controversy requirement and thus the court did not have subject matter jurisdiction.

6    ECF No. 11 at 14. Judge Suko denied this motion. ECF No. 26. More than two

7    years later, Defendant moved for leave to file a motion to dismiss for lack of

8    subject matter jurisdiction (ECF No. 164). The motion to dismiss, currently before

9    the Court, requests reconsideration of Judge Suko's May 19, 2011, order. ECF No.

10    165 at 2. It argues that Plaintiff lacked a good-faith allegation of amount in

11    controversy when the complaint was filed and that Plaintiff's assumption of future

12    damages was speculative as a matter of law. *Id.*

13    　　　　　　　　　　　　　　　　DISCUSSION

14    **A. Amount in Controversy**

15    　　　　United States District Courts have original subject-matter jurisdiction over

16    cases between citizens of different states and in which the amount in controversy

17    exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). The party

18    invoking a federal court's diversity jurisdiction has the burden of establishing that

19    § 1332(a)'s diversity of citizenship and amount-in-controversy requirements have

20    been satisfied. *See Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010).

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 4

1    The amount in controversy is generally determined from the face of the

2    pleadings. *Crum v. Circus Circus Enterprises*, 231 F.3d 1129, 1131 (9th Cir.

3    2000). "The sum claimed by the plaintiff controls so long as the claim is made in

4    good faith." *Id.* (citing *St. Paul Mercury Indem. Co v. Red Cab Co.*, 303 U.S. 283,

5    288 (1938)). "In actions seeking declaratory or injunctive relief, it is well

6    established that the amount in controversy is measured by the value of the object of

7    the litigation." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (citing

8    *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)).  The

9    amount in controversy is determined at the time of suit. *Molina v. Richardson*, 578

10    F.2d 846, 849 (1978). "To justify dismissal, it must appear to a legal certainty that

11    the claim is really for less than the jurisdictional amount." *Crum,* 231 F.3d at 1131

12    (citations omitted).

13    Here, it does not appear to a legal certainty that the Trust's claim is really for

14    less than the jurisdictional amount. In addition to the unspecified money damages

15    the Trust claims, the Trust requests "permanent injunctive relief" to prevent

16    Defendant from "retaining any portion of Plaintiff's royalties." ECF No. 7 at 18-

17    19.  In cases seeking injunctive relief, the amount in controversy is determined by

18    the value of the object of the litigation. *Cohn*, 281 F.3d at 840. The object of the

19    requested injunctive relief as stated in the Trust's amended complaint is, in part,

20    AREC's right to retain fees stemming from future royalty payments. *See* ECF No.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 5

7 at 19. The Agreement specifies that AREC is entitled to an "on-going" 25 then 50 percent of semi-annual royalty payments, ECF No. 7-1; the Agreement does not have a definite duration, *id*.; and the Trust seeks on-going and indefinite injunctive relief, *see* ECF No. 7 at 18-19.

The Trust notes that it used $12,000 in royalty payments per year[1] as an average to calculate the amount in controversy because it was the "base" the parties had agreed to use in the past. *See* ECF No. 183 at 3. However, even if the Court uses as a base the average yearly royalty income from 2006 through 2010[2] (when AREC's involvement began through commencement of this suit), the jurisdictional amount would be reached within 20 years: $7,576.73 (the 2006-2010 average) divided in half (50 percent fee claimed by AREC) equals $3788.36; multiplied by 20 years, equals $75,767.26.  Defendant argues that "the amount of royalties generated in the years preceding the filing of the complaint was far from consistent." ECF No. 165 at 8. However, even if the yearly royalty payments decrease in value, they could conceivably continue to accrue for many years; thus,

_____

[1] This is the amount used in Judge Suko's order denying Defendant's first motion to dismiss. ECF No. 26. Defendant disputes the propriety of using this number in several instances. *See* ECF No. 165 at 2, 4, 7 and 8.

[2] *See* earnings table, ECF No. 183 at 14.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 6

the Court cannot find *to a legal certainty* that they will not exceed the

jurisdictional amount.

AREC argues that the Trust cannot base jurisdiction on events occurring

after the complaint is filed. ECF No. 184 at 8. However, here, the jurisdictional

amount is calculated based on the value of the contract; i.e., the amount AREC

would have a right to take under the contract. The contract—and its resulting

potential future benefit or liability—existed at the time the complaint was filed.

AREC also contends that "the extrapolation of future royalties based on past

sales of Mr. Mitchell's works constitutes improper speculation as a matter of law."

ECF No. 165 at 8. The Court finds Defendant's arguments and cited authority

unpersuasive. For example, AREC states that "consideration of future payments in

computing the amount in controversy" is limited "to awards that may be paid by a

single judgment reduced to present value" citing *Aetna Cas. & Sur. Co. v. Flowers*,

330 U.S. 464, 467 (1947). ECF No. 165 at 9. *Aetna* succinctly stated the principle

that "[i]f this case were one where judgment could be *entered only for the*

*installments due at the commencement of the suit. . .* future installments could not

be considered in determining whether the jurisdictional amount was involved...."

*Id.* (emphasis added). But then the Court held, "this is not that type of case." *Id.*

In *Aetna*, a widow sued for burial expenses and death benefits payable at a rate of

not more than $18 per week. At that time, the diversity minimum amount in

controversy was $3,000.  Death benefits were limited to 60% of the average

weekly wages of the deceased, could not continue for more than 400 weeks, ceased

upon the death or remarriage of the widow, and ceased upon the attainment of the

age of eighteen by her children.  The Supreme Court then held:

> Nor does the fact that it cannot be known as a matter of absolute certainty that the amount which may ultimately be paid, if respondent prevails, will exceed $3,000, mean that the jurisdictional amount is lacking. This Court has rejected such a restrictive interpretation of the statute creating diversity jurisdiction. It has held that a possibility that payments will terminate before the total reaches the jurisdictional minimum is immaterial if the right to all the payments is in issue. Future payments are not in any proper sense contingent, although they may be decreased or cut off altogether by the operation of conditions subsequent. And there is no suggestion that by reason of life expectancy or law of averages the maximum amount recoverable can be expected to fall below the jurisdictional minimum. Moreover, the computation of the maximum amount recoverable is not complicated by the necessity of determining the life expectancy of respondent.

*Id*. at 348 (citations omitted).

The instant case is more like *Aetna* than not.  The Trust seeks prospective

injunctive relief for future royalty payments; thus the judgment it seeks is not just

the payments due at the commencement of the suit, but rather it also includes a

stream of royalty payments indefinitely.

Defendant cites several cases concerning the amount in controversy in

removal proceedings (*see* ECF No. 165 at 9-12; ECF No. 184 at 4-5), but the Court

does not find them persuasive because "somewhat different standards of proof

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 8

1  typically are used for actions that enter the federal court system by way of

2  removal….” 14AA <u>Wright & Miller, Fed. Prac. & Proc. Juris.</u> § 3702 (4th ed.

3  2013). The test here is whether Defendant can establish to a “legal certainty” that

4  the claim is really for less than the jurisdictional amount. Defendant has not done

5  so here.

6  **B. Other Matters**

7        Additionally, AREC’s supplemental reply asks the Court to strike the Trust’s

8  “improper surreply submitted in the guise of a tardy ‘opposition.’” ECF No. 184 at

9  3. The Trust’s Opposition to Defendant’s Motion to Dismiss for Lack of Subject

10  Matter Jurisdiction (ECF No. 183) was filed on October 1, 2013—fourteen days

11  after the Court granted Defendant’s Motion for Leave to File Motion to Dismiss.

12  *See* ECF No. 180. This is within the time allotted by Local Rule 7.1(b) for filing a

13  responsive memorandum to a dispositive motion. The Trust’s opposition is timely

14  and was not waived by its earlier opposition to Defendant’s motion for leave to file

15  its motion to dismiss. The Court declines to strike the Trust’s response.

16        Accordingly, **IT IS HEREBY ORDERED:**

17        Defendant’s Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF

18  No. 165) is **DENIED**.

19  ///

20  ///

ORDER DENYING DEFENDANT’S MOTION TO DISMISS ~ 9

1    The District Court Executive is hereby directed to enter this Order and

2  provide copies to counsel.

3    **DATED** October 8, 2013.



4

5                                    THOMAS O. RICE
                                United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

ORDER DENYING DEFENDANT'S MOTION TO DISMISS ~ 10